IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CODY REID LUNSFORD,<br><br>    Petitioner,<br><br>v.<br><br>MARGARET GREEN, warden,<br><br>    Respondent. | )<br>)<br>)<br>)<br>)  Case No. CIV-25-276-D<br>)<br>)<br>)<br>) |

## **ORDER**

This matter is before the Court for review of the Report and Recommendation ("Report") [Doc. No. 19] issued by United States Magistrate Judge Shon T. Erwin pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). The Report recommends granting Respondent's Motion to Dismiss [Doc. Nos. 11, 12] and dismiss the Petition because it is time barred. Petitioner timely objected. [Doc. No. 22]. Accordingly, the Court must make a *de novo* determination of those portions of the Report to which a specific objection is made, and may accept, modify, or reject the recommended decision in whole or in part. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

## BACKGROUND

Petitioner, a state prisoner, brought this action seeking a writ of habeas corpus under 28 U.S.C. § 2254, seeking relief from his conviction and sentence for one count of child abuse by injury in Pottawatomie County District Court, Case No. CF-2015-339 ("State Matter"). [Doc. No. 1]. Judge Erwin recommends that the Petition be deemed time barred under the one-year limitation period of 28 U.S.C § 2244(d). [Doc. No. 19]. Judge Erwin

1

also concludes that no basis exists for statutory or equitable tolling of the one-year limitations period. *Id.*

In his objections, Petitioner does not dispute Judge Erwin's historical account of the state court proceedings; thus, the Court accepts this portion of the Report.[1] [Doc. No. 22]. Nor does Petitioner raise any specific objection to Judge Erwin's analysis of the untimeliness of the Petition under 28 U.S.C. § 2244(d). *Id.* However, Petitioner objects to Judge Erwin's determination that Petitioner did not present a "credible" claim of actual innocence to warrant an equitable tolling of the limitations period.[2] *Id.*

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a one-year limitations period for claims of a habeas petitioner in state custody. *Rhine v. Boone*, 182 F.3d 1153, 1154 (10th Cir. 1999). However, courts may excuse noncompliance with the AEDPA's one-year limitations period if a petitioner makes "a credible showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). When used to overcome procedural issues, "a claim of 'actual innocence' is not itself a constitutional claim, but

---

[1] Petitioner has waived further review of all issues as to which no specific objection is made. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

[2] The Court recognizes that Petitioner lists six objection headings in his Objection to the Report. [Doc. No. 22]. The Court construes Petitioner's arguments in sections "Objection One," "Objection Two," "Objection Four," and "Objection Six" as challenging the Report's conclusion that he failed to make a credible showing of actual innocence. Moreover, in "Objection Three" Petitioner objected to Respondent's purported failure to contest his claims in state court, and in "Objection Five" he objected to the Report's criticism of his failure to submit records that he cited to in his Petition. Petitioner fails to present any argument or cite any legal authority establishing that "Objection Three" or "Objection Five" affects the determination of whether his claims are time-barred, nor is the Court aware of any. Thus, the Court need not and does not address them.

instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). "[A] petitioner need not make a case of conclusive exoneration," *Fontenot v. Crow*, 4 F.4th 982, 1030 (10th Cir. 2021) (quotation and citation omitted). However, the standard is "demanding." *McQuiggin*, 569 U.S. at 401. "[T]enable actual-innocence gateway pleas are rare." *Id.* at 386. Indeed, they arise only "in an extraordinary case." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To present a "credible" claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The Tenth Circuit interprets "new reliable evidence" broadly, to include any evidence that was not presented at trial, regardless of whether such evidence is newly discovered. *See Fontenot*, 4 F.4th at 1032-33.

If "new reliable evidence" exists, then the petitioner must demonstrate that when considering the new evidence "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. And "[w]hile a gateway innocence claim requires new reliable evidence to be credible, the habeas court's analysis is not limited to such evidence." *Fontenote*, 4 F.4th at 1052 (quotation and citation omitted). "Rather, the habeas court must consider all the evidence, old and new, incriminating and exculpatory, and thereby reasonably base its probabilistic determination

3

about what reasonable, properly instructed jurors would do on the total record." *Id.* (quotation and citation omitted).

Although the actual innocence test does not require a showing of diligence, the federal habeas court "should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown." *McQuiggin*, 569 U.S. at 387.

Petitioner argues that his new evidence[3] clearly indicates that the baby's (referred to herein as A.G.) injuries were not caused by abuse. [Doc. No. 22]. Specifically, Petitioner argues that the new evidence shows that A.G.'s condition and symptoms were caused by meningitis, sepsis, or clotting disorders, which were not properly diagnosed or treated. *Id.* Petitioner argues that the physicians' failures to properly diagnose and treat A.G.'s illnesses were the causes of A.G.'s harm. *Id.* Moreover, Petitioner argues that the new evidence demonstrates that A.G. did not suffer a skull fracture. *Id.*

Petitioner relies upon three categories of new evidence: 1) evidence from Dr. Lori Crow, 2) evidence from Dr. Kathryn Cook, and 3) evidence from Dr. Harvey Jenkins.

Approximately one week prior to the incident, Dr. Crow treated A.G. for acute otitis media (an ear infection), which she stated could be caused by bacteria or a virus. [Doc. No. 12-12, at p. 3]. Dr. Crow prescribed amoxicillin for the ear infection. *Id*. In response to

---

[3] In his objections, Petitioner does not dispute Judge Erwin's determination that Petitioner's evidence from Dr. Lori Crow, evidence from Dr. Kathryn Cook, and evidence from Dr. Harvey Jenkins constituted "new evidence" as "it is evidence that had not been presented at trial." [Doc. No. 19, at p. 15-19]. Thus, the Court accepts this portion of the Report.

written deposition questions, Dr. Crow answered that she would have prescribed to A.G. a different antibiotic than amoxicillin, if A.G.'s bloodwork had detected the presence of the Enterobacter Cloacae, Viridans Streptococcus Group, or Staphylococcus, Coag Negative. *Id.* at p. 4. Dr. Crow did not dispute that these three bacteria could cause meningitis. *Id.* at p. 4-5. Petitioner argues that Dr. Crow's responses clearly show the baby was sick with an "organism" prior to the date of the incident in question, and that such illness had gotten progressively worse. [Doc. No. 22, at p. 4].

Dr. Cook treated A.G. on the date of the incident. In response to a written deposition question, Dr. Cook provided that she could not recall how she learned of A.G.'s skull fracture. *Id.* at p. 6. Petitioner argues that Dr. Cook's inability to recall how she learned of the skull fracture supports his assertion that A.G. did not suffer from a skull fracture. Petitioner does not identify any other specific evidence from Dr. Cook that he alleges supports his claim of "credible" innocence. *Compare* [Doc. No. 1, at p. 21-32] *with* [Doc. No. 12-11]. Rather, he generally asserts that Dr. Cook's answers to the written deposition questions were based on science and are exculpatory, and contrary to the Report's determination. [Doc. No. 22, at p. 4].

Dr. Jenkins reviewed the evidence from Drs. Crow and Cook, Dr. James Glenn's[4] report interpreting A.G.'s CT scan, Dr. Sandeep Prabhu's[5] report interpreting A.G.'s skeletal survey, as well as medical records from St. Anthony's and OU Children's hospitals,

---

[4] At the time of the incident, Dr. Glenn was a radiologist at St. Anthony's who reviewed the images from A.G.'s CT scan.
[5] At the time of the incident, Dr. Prabhu was a radiologist at OU Children's hospital who reviewed A.G.'s skeletal survey.

5

and transcripts of the trial testimony, and concluded that A.G. did not suffer a skull fracture.[6] [Doc. No. 12-14, at p. 13]. Additionally, Dr. Jenkins concluded that:

> It is my opinion that the swelling of the brain was the result of infection by an organism. The records indicate Disseminated Intravascular Coagulation which also [is] indicative of sepsis. The elevated platelet count, noted in St. Anthony's and O.U. Children's confirms "thrombocytosis" which is a reactive response to infection. Clotting abnormalities such as that which occurs in DIC involve small blood clots which develop throughout the body with associated hemorrhage. I believe this phenomenon is responsible for the finding of retinal hemorrhage, subdural hematoma and petechiae.

*Id.* at p. 14. Petitioner argues that Dr. Jenkins' conclusion "shows problems caused by organisms in the baby's blood, and that is consistent with the evidence." [Doc. No. 22, at p. 5].

Considering Petitioner's new evidence in conjunction with the evidence presented at trial, the Court agrees with the Report's finding that Petitioner has failed to establish that "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. Indeed, Detective Charles Swantek's testimony at the trial in the State Matter regarding A.G.'s injuries and his interview with Petitioner regarding Petitioner's explanation of the cause of A.G.'s injuries do not support Petitioner's claim of innocence. As noted by Judge Erwin, Detective Swantek testified about A.G.'s injuries, including jawline bruising, inner ear bruising, a laceration on A.G.'s

---

[6] The Court has strong doubts as to the credibility of Dr. Jenkins' report as he no longer has a medical license, has a significant number of criminal convictions, and lacks experience in pediatric medicine. [Doc. Nos. 12, at p. 19-21]. However, the Court need not address his credibility because even considering Dr. Jenkins' evidence, Petitioner has not demonstrated a credible claim of innocence.

left lower cheek, bruising around both eyes and her forehead, left ear bruising and petechia in the corner of the left eye. [Doc. No. 13-1, at p. 352-56]. Moreover, Detective Swantek testified to the incompatibility of Petitioner's explanation as to the cause of A.G.'s injuries, i.e. rolling off the bed, with the scene in the home and the severity and location of A.G.'s injuries. *Id.* at p. 409-12.

Moreover, the trial testimony of Dr. Ryan Brown, a child abuse pediatrician, in the State Matter also weighs against Petitioner's claim of innocence. Dr. Brown testified regarding A.G.'s injuries, and the incompatibility of Petitioner's explanation regarding the cause of A.G.'s injuries considering their severity and location. *Id.* at p. 457-68. Indeed, Dr. Brown testified about the head being essentially a round ball, and A.G.'s face showing bruising from six points of contact, which would be "hard to explain" based on Petitioner's story about A.G. rolling off the bed and striking her head on the nightstand, as that would be one-point of contact. *Id.* at p. 458-61. Moreover, he testified that if a four-month-old baby has bruising in its ears, like A.G., it is "very concerning for . . . abuse" as a baby that young does not have the dexterity to dig in their ears to cause bruising. *Id.* at p. 463-64. Further, Dr. Brown testified that A.G. suffered from a skull fracture and suffered a subdural hematoma, which were "highly concerning for abuse." *Id.* at p. 468-73.

Moreover, contrary to Petitioner's assertion, there is evidence that A.G. suffered a skull fracture, which was admitted at trial in the State Matter. [Doc. No. 14-2, at p. 20-23]. Dr. Naina Gross, the attending pediatric neurologist, observed a skull fracture on A.G.'s images from the CT scan and noted it in her February 27, 2015, consultation note. *Id*.

7

The Court also agrees with Judge Erwin's finding that Dr. Crow's evidence does not show that A.G.'s illness progressively got worse because she had the three other bacteria, which would have required different medications to treat. [Doc. No. 19, at p. 22]. Dr. Crow did not confirm that A.G. had the purported bacteria. *Id.* Rather, she stated that if such bacteria were present then a different antibiotic would have been necessary for treatment. *Id.*

Additionally, the Court agrees with Judge Erwin's determination that the evidence from Dr. Cook is not exculpatory. *Id.* at p. 22-23. Although in response to a written deposition question Dr. Cook stated that she did not recall how she received the information about A.G.'s skull fracture, that does not prove that there was no skull fracture. [Doc. No. 12-11, at p. 2]. Indeed, Dr. Cook also responded that it is possible the x-ray would not have shown a new fracture, but the CT scan would, as it is more sensitive. *Id.* Moreover, Dr. Cook answered that:

> Retinal hemorrhages are highly associated with abusive head trauma in infants under 6 months of age. The greater number of retinal hemorrhages and the bilateral location increases the likelihood of abusive head trauma. In my experience, I have not seen bilateral retinal hemorrhages as the result of an infection.

*Id.* at p. 5. She also opined that A.G.'s "elevated white blood cell count does not diagnose an infection," and believed the elevated platelet count was a "reaction to stress on the body." *Id.* at p. 6. Furthermore, she opined that:

> In my note, that was written at the time of the encounter, I was very clear that I felt her constellation of injuries: subdural hematoma, bilateral retinal hemorrhages, multiple bruises on the face, was very concerning for child abuse. The vast

8

>   majority of the patients I care for do have infectious causes for their hospitalization. It is my medical judgment that A.G.'s condition was caused by abusive head trauma and not infection.

*Id*.

This Court also agrees with Judge Erwin's determination that based on the totality of the evidence, Dr. Jenkins' report is insufficient to establish a "credible" claim of actual innocence for Petitioner.

Accordingly, Petitioner has not presented a "credible" claim of actual innocence, as he has not demonstrated that "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. Thus, Petitioner's claim is time-barred.

## CONCLUSION

The Court reviewed the Report, as well as the case record, and fully concurs in the Report [Doc. No. 19]. Therefore, the Court, having conducted a *de novo* review, finds that Petitioner's objection [Doc. No. 22] should be overruled, and hereby **ADOPTS** the Report [Doc. No. 19] in its entirety.

**IT IS THEREFORE ORDERED** that Respondent's Motion to Dismiss [Doc. Nos. 11, 12] is **GRANTED**, and the Petition [Doc. No. 1] is **DISMISSED WITH PREJUDICE**. A separate judgment shall be entered.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a petitioner. A COA may issue only if Petitioner "has

made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Upon consideration, the Court finds the requisite standard is not met in this case. Therefore, a COA is **DENIED**.

    **IT IS SO ORDERED** this 11th day of February, 2026.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge